POLEN, Judge.
Solange Buttigieg, defendant below, appeals from an order denying her motion to vacate a final default judgment and to quash service of process. We affirm.
Appellant is a resident of France and she does not speak English. On November 2, 1991, while in Broward County visiting ap-pellee (her aunt), the two women attended a bingo game. Appellant won $36,000.[1] The dispute arose from appellee’s allegations that she and appellant orally agreed prior to the game to share equally in any winnings, which appellant denies. On November 7, 1991, as appellant waited to board a flight to France at the Miami International Airport, she was personally handed a summons and complaint from appel-lee.[2] According to an affidavit the process server submitted to the court, a French-speaking interpreter fully explained the summons to appellant, who related to the interpreter that she fully understood the summons. According to the interpreter, appellant also indicated that she had left the disputed funds in the bank in Florida for appellee.
Appellant did not file a responsive pleading within twenty (20) days. On December 3, 1991, appellee filed a motion for final judgment by default and mailed a copy of the motion and notice of hearing to appellant in France. Appellant did not appear at the hearing and the trial court entered a default judgment on December 10, 1991, in the amount of $21,872.83.
Later in December, appellant contacted a French attorney who then contacted Paul Finizio, a Fort Lauderdale attorney. In an affidavit Mr. Finizio provided the court, he stated that the French attorney contacted him between December 20 and 30, 1991. Upon checking the court records and finding that a default judgment had been entered, he contacted appellee’s counsel to determine if appellee would voluntarily vacate the default judgment. According to Mr. Finizio, the two lawyers came to an agreement that the judgment would be vacated, and he prepared a stipulation and *669 order to vacate said judgment and mailed it to appellee’s counsel on January 13, 1992. This agreement, however, was never executed. Instead, on January 16,1992, appel-lee’s counsel filed a motion to withdraw from the case. In February, 1992, she filed an affidavit wherein she acknowledged her conversations with Mr. Finizio, but disputed Mr. Finizio’s statement that they had reached an agreement to vacate the default judgment.[3]
Appellee then hired attorney Robert Plafsky. Mr. Finizio contacted Mr. Plafsky and advised him that he would be filing a motion to vacate the default judgment. Mr. Finizio obtained a hearing date of April 21, 1992, and on March 3, 1992, Mr. Finizio filed a motion to vacate the default judgment. His co-counsel subsequently prepared and filed an amended motion to vacate the default judgment and to quash service of process based on a lack of personal jurisdiction. The motion alleged that service of process was defective under Florida Rule of Civil Procedure 1.902(b), which provides for service upon natural persons with a new form that includes a French translation; thus, any default judgment entered thereon should be set aside. As additional grounds, appellant alleged excusable neglect, due diligence, and the meritorious defense that she never agreed to share her bingo winnings with her aunt. Attached to appellant’s motion to vacate the default was an affidavit wherein she stated that her neglect in not responding was excusable because she was not acquainted with any Florida attorneys or any French attorneys who were familiar with American law. Thus, she did not know that she needed to respond within twenty (20). days. In the instant appeal she also argues that she received appellee’s motion for default final judgment and notice of hearing after December 10, 1991, and that she could not understand them, in any event. At the April 21st hearing on appellant’s motion, the trial court ruled that service of process was valid and that appellant failed to exercise due diligence; appellant’s motion was denied and the court entered an order to that effect on the same day.
Appellant made a general appearance when she filed her motion to vacate on March 3, 1992, and she did not raise the issue of in personam jurisdiction or challenge service of process. It was not until the amended motion was filed, on April 13, 1992, that this issue was raised. Thus, we hold that she waived her right to contest jurisdiction over her person. See Fla. R.Civ.P. 1.140(b). Had she not waived this right, we nevertheless would affirm on this issue.
The general summons form was changed effective 1988 to include translations in Spanish and French. Fla.R.Civ.P. 1.902; In re Amendments to Rules of Civil Procedure, 536 So.2d 974 (Fla.1988). Notwithstanding, we disagree with appellant’s contention that the amendment to the rule automatically nullifies service of process effected with the pre-amendment form, without regard to other factors surrounding the service. Rule 1.900(a) provides that “[vjariations from the forms do not void process or notices that are otherwise sufficient.” Fla.R.Civ.P. 1.900(a). Irregularities in a writ or other process, where they do not prejudice a defendant, will not invalidate the service. See Cox v. Cox, 490 So.2d 1051 (Fla. 4th DCA1986), and American Hospital of Miami, Inc. v. Nateman, 498 So.2d 444 (Fla. 4th DCA1986). Although appellee used the general form of summons, the process server retained a French interpreter to explain the summons to appellant. The general form of summons clearly states that the *670 recipient has twenty (20) days in which to respond and that failure to do so will result in a default being entered against that defendant for the relief demanded in the complaint. Accordingly, we hold that the purpose of service of process, i.e., to give a defendant proper notice that she is answerable to a plaintiff’s claim, to advise her of the nature of that claim and to afford the defendant an opportunity to defend against it, was served. See Nateman; Conde v. Professional Mediquip of Fla., Inc., 436 So.2d 322 (Fla. 4th DCA1983). In our view, the reasonable course for appellant to have taken would have been to have any English/French-speaking person translate the summons and complaint to her, if she was dissatisfied with the interpreter at the airport.
We also disagree with appellant’s contention that the process server’s affidavit was insufficient to support a finding of valid service. Appellant’s objection is that the affidavit contains hearsay as to what the interpreter may have said [in French?], and that even if otherwise sufficient, such hearsay would render the affidavit inadmissible as outside the business records exception in section 90.803(6), Florida Statutes. Appellant argues that the absence of an affidavit from the interpreter herself precluded the trial court from making a determination that service on appellant was “otherwise sufficient” under Rule 1.900(a). Under the facts of this case, however, the process server’s affidavit alone would be sufficient, unless appellant’s affidavit specifically refuted the contents of the interpreter’s translation. That did not happen here.
Regarding appellant’s contention that she exercised due diligence, we hold that the trial court did not abuse its discretion when it found that she failed to do so. We note that nothing occurred on the record from the time appellant’s attorney learned of the default, and the time appellant actually filed her motion to vacate.[4] Appellant then waited several weeks to file her motion to vacate the default even after appellee’s former attorney filed an affidavit disputing that any agreement existed to vacate the default judgment. Accordingly, we affirm the order denying appellant’s motion to vacate the default judgment and motion to quash service of process.
WARNER, J., concurs in conclusion only.
GUNTHER, J., dissents without opinion.

. According to appellant, upon appellant declaring herself a winner, appellee advised her that if she declared that they were partners, and if the check were issued in appellee’s name, it would avoid a $12,000 tax for a non-U.S. resident. Thus, at appellee’s request, the bingo hall director made a check payable to her for $36,000 and gave cash to appellant in the amount of $6,000. According to appellant's affidavit, upon returning to appellee’s apartment, the check was endorsed over to appellant, who then gave ap-pellee $2,000 cash as a gift, and $500 cash to appellee’s brother. Thereafter, appellee requested $12,000 from appellant to pay the tax on the winnings. However, appellant responded that she would pay the tax directly at the appropriate office or upon appellee showing her a tax return reflecting same.

. Appellee’s complaint alleged that appellant had converted the sum of $21,000 by depositing it into a checking account in her name at Glendale Federal in Fort Lauderdale.

. The affidavit also states that after initially discussing the matter with appellee, the attorney offered to Mr. Finizio to vacate the judgment by way of a written stipulation, if appellant would agree to freeze her bank account at Glendale, where the disputed funds were located. At that time, the account balance was $33,000. Mr. Finizio stated that he would get back to appel-lee’s counsel, which he did on January 15, 1992, by way of a letter in which he stated that he would not agree to freeze the account. As a result, appellee’s counsel rejected Mr. Finizio’s stipulation to vacate the judgment. On January 16, she learned that appellant withdrew $8,000 from the account.

. This court’s decision cannot be guided by alleged telephone conversations that occurred between counsel; these conversations should not have precluded appellant’s counsel from filing a motion to vacate with the trial court as soon as he learned that default had been entered. In our view, under the instant facts, anything else precludes a finding of due diligence.